U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 OCT -3 PM 4:53

CLERK
BY ____ [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

VARSHA KONDAPALLI,

Plaintiff,

v.

DIRECTOR OF U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

Defendant.

Case No. 2:25-cv-289

**ORDER ON MOTION TO DISMISS**
**(Docs. 7, 9)**

Plaintiff Varsha Kondapalli brings this case under the Administrative Procedures Act (APA), 5 U.S.C. § 500 et seq., against the Director of the United States Citizenship and Immigration Services (USCIS) for unlawful withholding of parole based on her placement on the "U visa" waitlist. (Doc. 8.) As a member of the waitlist, Ms. Kondapalli is the beneficiary of a decision by USCIS that her application for a U visa is meritorious. However, due to an annual cap on the number of U visas USCIS can issue, Ms. Kondapalli faces a wait of more than a decade before she can receive status. She is currently in India and seeks parole—permission to enter and remain in the United States—while her application is pending. Currently pending is Defendant's Motion to Dismiss the First Amended Complaint (Doc. 9) under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendant's First Motion to Dismiss (Doc. 7), which also remains pending, is moot because it sought dismissal of the original complaint, which has been superseded by the First Amended Complaint.

**Statutory History**

Because this case is related to an agency's application of federal immigration law, it is helpful to review the relevant statutory and regulatory provisions. In 2000, Congress created the "U visa" program by enacting 8 U.S.C. § 1101(a)(15)(U) as part of the Victims of Trafficking and Violence Protection Act of 2000. Pub. L. 106-386, § 1513, 114 Stat. 1464, 1533–37. The U visa program encourages noncitizens who are victims of certain crimes to report the crimes and assist law enforcement with investigation and prosecution. In exchange, a recipient of the visa may receive lawful nonimmigrant status and employment authorization for up to four years. 8 U.S.C. § 1184(p)(6). "A U visa generally entitles an eligible noncitizen to lawfully remain in the United States and to seek work authorization." *Meza Morales v. Barr*, 973 F.3d 657 (7th Cir. 2020). Three years after receiving a U visa, a nonimmigrant may apply for status as a lawful permanent resident. 8 U.S.C. § 1255(m)(l).

The statutory requirements for the U visa program include proof of substantial physical or mental abuse due to serious listed crimes including sexual abuse, enslavement and trafficking, domestic violence, felony assault, and other listed crimes. *Id.* § 1101(a)(15)(U). A petitioner must provide a certification from a federal, state, or local law enforcement official or judge stating that the petitioner "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of such a crime. The maximum number of U visas was capped by statute at 10,000 per year (plus additional visas for qualifying family members). *Id.* § 1184(p)(2)(A).

It quickly became clear that the number of applications would greatly exceed 10,000 per year. In 2007, USCIS issued comprehensive regulations governing the U visa application process. New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant

Status, 72 Fed. Reg. 53,014 (Sept. 17, 2007). These regulations now appear at 8 C.F.R. § 214.14. USCIS authorized a wait list for petitioners who met criteria for a U visa.

> All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement. . . . USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.

8 C.F.R. § 214.14(d)(2); 72 Fed. Reg. 53,027 (Sept. 17, 2007).

The regulations at 8 C.F.R. § 214.14(d)(2) effectively provide applicants with favorable waiting list decisions (WLDs) permission to work and protection from removal. Deferred action, as provided for in the regulations, is "an act of administrative convenience to the government that gives some cases lower priority" for removal. *Id.* § 274a.12(c)(14). Thus, foreign nationals with deferred action do not have immigrant or nonimmigrant status, but they do have protection from removal for the period authorized by USCIS. Parole, on the other hand, is a process by which USCIS can allow someone to lawfully enter the United States who would otherwise be inadmissible or ineligible for admission into the country. 8 U.S.C. § 1182(d)(5)(A); United States Citizenship & Immigration Serv., *Humanitarian or Significant Public Benefit Parole for Noncitizens Outside the United States*, https://www.uscis.gov/humanitarian/ humanitarian_parole [https://perma.cc/58HD-RKGB]. Parole therefore allows waiting list applicants who are abroad to come to the United States. U visa applicants with WLDs therefore receive most of the privileges afforded to U visa recipients.[1]

---

[1] Although the wait list process was designed to promptly provide U visa applicants with work authorization and protection from removal, it often takes years for USCIS to place petitioners on the waitlist. Thus, in 2008, Congress passed legislation allowing USCIS to issue work authorization to petitioners who had submitted a bona fide application for a U visa. The relevant provision now appears at 8 U.S.C. § 1184(p)(1)–(6). USCIS has since implemented a bona fide determination process that establishes an expedited procedure. Thus, there are now

**Factual Background**

The following facts are drawn from the Amended Complaint, the documents attached to the Amended Complaint, and documents of which the court can take judicial notice. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (on a motion to dismiss, a court may consider "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, as well as documents not expressly incorporated by reference in the complaint that are nevertheless integral to the complaint" (cleaned up)). As required on a motion to dismiss, the court accepts these facts as true for the purposes of this opinion. *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

Ms. Kondapalli is a citizen and national of India who first came to the United States on an F-1 student visa to attend college. (Doc. 8 ¶¶ 47–48.) During her lawful stay in the United States, Ms. Kondapalli was the victim of a serious crime that made her eligible for a U visa. (*Id.* ¶¶ 49–50.) Ms. Kondapalli assisted the police with their investigation and, on January 3, 2018, filed an application for a U visa. (*Id.* ¶¶ 50–53.) On April 4, 2022, USCIS issued Ms. Kondapalli a Request for Evidence. (*Id.* ¶ 56.) In her response, she informed USCIS that she had returned to India. (*Id.* ¶ 57.)

On July 18, 2022, USCIS placed Ms. Kondapalli on the U visa waitlist, but it did not grant her parole. (*Id.* ¶ 58.) Instead, it instructed her to apply for parole using USCIS Form I-131. (*Id.* ¶ 59.) Ms. Kondapalli did not submit form I-131 but, following litigation on the matter, USCIS reissued Ms. Kondapalli's waiting list decision on September 12, 2023, and

two distinct interim remedies for U visa petitioners. In this case, however, Plaintiff has received a waiting list decision, so the court need not discuss the details of the bona fide determination process.

conditionally approved her for parole. (*Id.* ¶¶ 60–62.) Ms. Kondapalli completed the remaining steps to receive a parole document, traveled to the United States, and was paroled into the United States by a Customs and Border Patrol agent in June 2024. (*Id.* ¶¶ 63–65.) While in the United States, Ms. Kondapalli prepared to testify at a civil proceeding against the person who victimized her, but the case settled. (*Id.* ¶ 66.) Twelve days after her arrival in the United States, Ms. Kondapalli returned to India to complete the course of treatment she was undergoing to address the trauma she suffered as a result of her victimization. (*Id.*)

Ms. Kondapalli now wishes to return to the United States. (*Id.* ¶ 70.) Through her attorney, she has inquired with USCIS whether it will once again authorize her to receive parole. (*Id.* ¶ 72.) USCIS instructed Ms. Kondapalli to use Form I-131 to apply for parole. (*Id.* ¶ 73.) Ms. Kondapalli has not filed Form I-131 because she believes Form I-131 does not recognize placement on the U visa waitlist as a basis for receiving parole. (*Id.* ¶ 74.) Ms. Kondapalli asserts that there is no formal way for her to request parole based on her placement on the U visa waitlist. (*Id.* ¶ 78.)

**Rule 12(b)(1) Standard**

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicated it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008.) "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison*, 547 F.3d at 170.

**Rule 12(b)(6) Standard**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff "must plead enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 78 (2d Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In evaluating a Rule 12(b)(6) motion, the court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Trs. of Upstate N.Y. Eng'rs*, 848 F.3d at 566) (internal quotation marks omitted). "Dismissal is appropriate when 'it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law.'" *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019) (alteration in original) (quoting *Parkcentral Glob. Hub Ltd. v. Porsche Auto Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014)).

**Analysis**

Defendant seeks dismissal on two grounds: that this court lacks jurisdiction to review Plaintiff's claim and that Plaintiff has failed to state a plausible claim for relief. The court addresses these arguments in turn.

**I. Subject Matter Jurisdiction**

The government contends that the court lacks jurisdiction to consider Plaintiff's claims, pointing to 8 U.S.C. § 1252(a)(2)(B). That statute reads, in relevant part:

> **(B) Denials of discretionary relief**
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

As Defendant notes, the Department of Homeland Security's (DHS) parole authority is codified at 8 U.S.C. § 1182(d)(5)(A), which is part of "this subchapter," as referred to in § 1252(a)(2)(B)(ii). Further, § 1182(d)(5)(A) specifies that "[t]he Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States."

At first glance, Defendant's argument is compelling. Stepping back, however, § 1252 tells a different story. As Ms. Kondapalli notes, "Congress enacted § 1252 in 1996 as part of its decades-long effort to channel challenges to deportation and exclusion orders to United States [c]ircuit courts" rather than district courts. (Doc. 10 at 4.) The statute has since been amended, but its purpose remains the same. *See Mahdawi v. Trump*, 781 F. Supp. 3d 214, 224 (D. Vt. 2025) ("[T]he Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ('IIRIRA'), Pub. L. 104-208, 110 Stat. 3009, and the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, both of which amend the Immigration and Nationality Act (INA), contain 'jurisdiction stripping' provisions that constrain the authority of a federal district court to review administrative decisions concerning removal of non-citizens."). Section 1252 is thus entitled "Judicial review of orders of removal."

In *Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025), the Second Circuit considered a similar issue. In that case, the Department of Homeland Security placed the plaintiff in immigration detention, and she challenged the legality of that detention. The government defended against

the action by arguing that 8 U.S.C. §§ 1252(a)(2)(B)(ii), 1252(a)(5), 1252(b), 1252(g), and 1226(e) barred judicial review of the detention decision. In holding that none of these provisions barred judicial review, the Second Circuit repeatedly emphasized that § 1252 concerns only review of removal proceedings—removal orders, the decision to commence removal proceedings, and the like. *See, e.g.*, *id.* at 396–97 (discussing § 1252(g), stating that the statute bars only review of "three discrete actions: a decision to *commence* proceedings, *adjudicate* cases, or *execute* removal orders" (cleaned up)). Because the plaintiff was challenging her detention, not the decision to place her in removal proceedings, the provisions cited by the government did not prevent judicial review.

Particularly helpful is the Second Circuit's discussion of § 1252(b), where it noted that, "[a]s a threshold matter, the very text of § 1252(b) sets our requirements only '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Id.* at 399 (second alteration in original) (quoting 8 U.S.C. § 1252(b)). Ignoring that narrowing language at the outset of § 1252(b), its limitations on judicial review seem quite broad. But the language is there, defining the scope of provisions that follow.

In this case, § 1252 is entitled "Judicial review of orders of removal." "[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." *United States v. Flores*, 945 F.3d 687, 728 (2d Cir. 2019) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). The clear implication of § 1252's title is that its more detailed provisions apply only to removal proceedings and orders of removal. Not only does this reading make the most sense, but, "with respect to § 1252(a)(2)(B)(ii) . . . , the Supreme Court has applied the 'presumption favoring interpretations of statutes [to] allow judicial review . . . absent a clear statement.'" *Ozturk*, 136 F.4th at 396

(second and third alterations in original) (quoting *Kucana v. Holder*, 558 U.S. 233, 237 (2010)). Section 1252's title is further evidence that § 1252(a)(2)(B)(ii) does not bar review of decisions related to parole outside of the context of removal proceedings. Judicial review is not barred in this case.

## II. Failure to State a Claim

In addition to its jurisdictional argument, Defendant argues that Ms. Kondapalli has failed to state a claim. Ms. Kondapalli's only cause of action is for "unlawful withholding of parole consideration." (Doc. 8 at 14 (all capitals excluded).) She contends that, although USCIS has already granted her parole once, it has a duty to grant her parole—or at least consider her for parole—again. She further contends that USCIS has violated that legal obligation because it has developed no mechanism for members of the U visa waitlist to request parole. (*Id.* ¶ 80.)

Defendant challenges this cause of action on two bases: (1) there is already a mechanism for overseas members of the waitlist to apply for parole; and (2) USCIS has no obligation to grant Ms. Kondapalli parole having already granted it to her once before.

Before turning to Defendant's challenges, the court addresses Ms. Kondapalli's contention that "Rule 12(b)(6) does not apply to APA challenges to final agency actions." (Doc. 10 at 8.) Citing a First Circuit case, *Atieh v. Riordan*, 727 F.3d 73 (1st Cir. 2013), Plaintiff reasons that the plausibility standard announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "ensures defendants only bear the burdens of discovery and trial in meritorious cases." *Id.* "But there is no discovery or trial in APA challenges that are subject to record review," Plaintiff notes. (Doc. 10 at 8.)

The case Plaintiff cites, *Atieh v. Riordan*, concerned USCIS's denial of the plaintiff's I-130 petition. The plaintiff sought review under the APA, arguing that USCIS's decision was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). USCIS filed a Rule 12(b)(6) motion to dismiss, and the plaintiff responded that he had met the plausibility standard. The district court dismissed the complaint.

The First Circuit reversed, reasoning that "[t]he focal point of APA review is the existing administrative record," yet the record was never presented to the court. *Atieh*, 727 F.3d at 76. The court noted that APA review "involves neither discovery nor trial," so there is "no need for screening" under Rule 12(b)(6). *Id.* Thus, in the First Circuit's view, "the plausibility standard has no place in APA review." *Id.* The court then held that reversal was necessary because it could not say that the district court's error was harmless. *Id.* at 77. Without a record, it was impossible to know whether USCIS has acted arbitrarily or capriciously, abused its discretion, or otherwise acted not in accordance with law.

The full administrative record is not before the court, and Defendant does not dispute that. Instead, Defendant distinguishes *Atieh* because this case involves the withholding of agency action, not a challenge to final agency action. (Doc. 11 at 3.) Defendant also notes that "the Second Circuit and courts within it routinely acknowledge that plaintiffs must still state a claim upon which relief can be granted, even when plaintiffs bring APA claims." (*Id.*) Finally, Defendant argues that, even under *Atieh*, the motion to dismiss is appropriate; *Atieh* recognizes that a Rule 12(b)(6) motion may be appropriate "where the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." *Atieh*, 727 F.3d at 76 n.4.

The court agrees with Defendant that it is appropriate to analyze the pending motion under Rule 12(b)(6). Ms. Kondapalli is not challenging the denial of a petition for status, as in *Atieh*. Rather, she argues that USCIS has unlawfully withheld a grant of parole. There are two

parts of her argument: (1) that there is no mechanism for her to apply for parole on the basis of her waitlist status; and (2) she is entitled to a grant of parole. Defendant's challenge to her first assertion involves a factual dispute: whether there is a mechanism for U visa applicants in Ms. Kondapalli's position to apply for parole. Defendant's challenge to her second assertion is based on an argument that the Amended Complaint is legally flawed. As discussed below, Defendant's first argument—its factual argument—does not justify dismissal of the Amended Complaint. Thus, no matter which standard applies, the court may proceed with its review in this case.

**A. Mechanism to Apply for Parole**

In the Complaint, Ms. Kondapalli alleges that the only mechanism for applying for parole is USCIS Form I-131 but that Form I-131 does not allow petitioners to apply based on status on the U visa waitlist. (Doc. 8 ¶ 59.) USCIS responds that, although Form I-131 does not specify that petitioners can apply based on status on the U visa waitlist, USCIS's Policy Manual directs that waitlisted U visa applicants "who are outside the United States" may seek parole and may do so "through the processes available to other aliens," i.e., Form I-131. USCIS Policy Manual, Vol. 3, Part C, Ch. 6., § B, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-6 [https://perma.cc/36AD-4EDC].

USCIS form instructions generally "have the same force as a regulation," USCIS Policy Manual, Vol. 7, Part A, Ch. 3, § A, https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-3 [https://perma.cc/4WGV-Y6NF] (citing 8 C.F.R. § 103.2(a)(1)), because they go through notice and comment rulemaking. Form I-131's instructions and its revisions are among those forms that have undergone notice and comment rulemaking. *See Agency Information Collection Activities: Application for Travel Document, Form Number I-131; Revision of a Currently Approved Collection*, 77 Fed. Reg. 71432 (Nov. 30, 2012). For parole applicants

applying from outside the United States, Form I-131 lists four specific programs or processes under which an applicant can apply, none of which is a U visa waitlist program. *See USCIS Form I-131, Application for Travel Documents, Parole Documents, and Arrival/Departure Records*, at 2–3 (Jan. 20, 2025), https://www.uscis.gov/sites/default/files/document/forms/i-131.pdf [https://perma.cc/7VXY-VDY2]. The form also allows an applicant to select "Other" and list a "specific parole program or process" not listed on Form I-131 under which the applicant wishes to apply. *Id.* at 3. Alternatively, an applicant can indicate that they are not applying under a specific parole program or process. *Id.*

Form I-131's instructions set out a list of required evidence for parole applicants who are not applying under a specific program or process. *Form I-131 Instructions*, at 26 (Jan. 20, 2025), https://www.uscis.gov/sites/default/files/document/forms/i-131instr.pdf [https://perma.cc/NZ3X-JGZX]. This evidence includes a "detailed description of the urgent humanitarian or significant public benefit reason for which a Parole Document is requested . . . and copies of evidence that support the basis for your request," as well as "Form I-134, Declaration of Financial Support, completed as directed in the Form I-134 Instructions, including the supporter's official identity documents and, if applicable, evidence of their citizenship or U.S. immigration status." *Id.* A person completing Form I-134 commits to financially supporting the parole recipient should the parolee be unable to financially support themselves while in the United States. *USCIS Form I-134, Declaration of Financial Support* (Jan. 20, 2025), https://www.uscis.gov/sites/default/files/document/forms/i-134.pdf [https://perma.cc/MV4P-D3YE].

As noted above, Ms. Kondapalli did not fill out Form I-131 when she received parole from USCIS. She did not have to describe or provide evidence of an urgent humanitarian or

public benefit reason for her request. She did not have to fill out Form I-134 or otherwise obtain a financial sponsor, as is often required to demonstrate that an applicant for an immigration benefit will not become a "public charge" within the meaning of the Immigration and Nationality Act (INA). That Ms. Kondapalli did not have to find a financial sponsor makes sense; U visa recipients—and applicants—are not subject to the public charge ground of inadmissibility, which provides that any noncitizen who, "in the opinion of the Attorney General . . . is likely at any time to become a public charge is inadmissible." 8 U.S.C. § 1182(a)(4); *see* 8 U.S.C. § 1182(a)(4)(E) (stating that the public charge ground of inadmissibility "shall not apply to a [noncitizen] who . . . is an applicant for, or is granted, nonimmigrant status under section 1101(a)(15)(U) of this title").

Instead, Ms. Kondapalli simply received a letter from USCIS informing her that it had conditionally approved her for parole and providing instructions for obtaining travel documents. That letter appears to be a "form letter" provided to overseas members of the U visa waitlist who have been conditionally approved for parole without submitting Form I-131. *See Rodriguez Hernandez v. Scott*, 775 F. Supp. 3d 821, 825 (D. Vt. 2025) ("Plaintiffs in this case received parole while residing in Colombia. The Government supplied the form letter informing them of the procedure for obtaining travel documents from the U.S. embassy or consulate in Colombia allowing them to travel to a United States port of entry."). It thus does not appear to be out of the ordinary that Ms. Kondapalli did not have to submit Form I-131 or comply with its additional evidentiary requirements.

It seems clear to the court that Ms. Kondapalli could fill out Form I-131, and USCIS would have to consider her application for parole. But it seems equally clear that she would have to find a financial sponsor, submit Form I-134, and present evidence of an urgent humanitarian

or significant public benefit reason justifying her petition for parole. Nothing in 8 C.F.R. § 214.14(d)(2) suggests that Ms. Kondapalli should have to fulfill these additional requirements beyond her placement on the waitlist in order to receive parole. To the contrary, it apparently contemplates a grant of deferred action or parole based solely on placement on the waitlist, stating that USCIS "will" grant deferred action or parole to members of the waitlist. Finally, it is not clear whether Ms. Kondapalli's placement on the U visa waitlist would constitute a "significant public benefit reason" for granting her application.

At this stage, considering the materials properly before the court, it appears that there is a mechanism for Ms. Kondapalli to apply for parole but not on the basis of her placement on the U visa waitlist. The current mechanism requires her to meet more conditions than contemplated by 8 U.S.C. § 214.14(d)(2). When USCIS *does* grant parole to members of the U visa waitlist, it does not impose such additional requirements, only asking that the applicant verify their identity and continued eligibility for waitlist placement. The USCIS Policy Manual, which states that waitlisted petitioners "who are outside the United States[] may generally seek parole on a case-by-case basis through the processes available to other aliens," does not alter the court's conclusion. USCIS Policy Manual, Vol. 3, Part C, Ch. 6., § B. That statement seems to merely state the obvious: that any noncitizen may apply for humanitarian parole by filing Form I-131. The court therefore rejects USCIS's argument that the Amended Complaint should be dismissed because there is already a mechanism for waitlist recipients to apply for parole.

**B. Entitlement to Parole**

Defendant next argues that, even if there is no way for Ms. Kondapalli to seek parole based on her waitlist placement, she has no cause of action because, having already been granted parole once, she is not entitled to receive parole again.

The parties' primary dispute on this point concerns the meaning of the word "while" in 8 C.F.R. § 214.14(d)(2): "USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members *while* the U-1 petitioners are on the waiting list." 8 C.F.R. § 214.14(d)(2) (emphasis added). Defendant reads this to mean that, on a single occasion, USCIS will grant either deferred action or parole to a petitioner "while" they are on the waitlist. On that view, USCIS has fulfilled its obligation to a member of the waitlist upon granting deferred action or parole for the first time.

Plaintiff interprets "while" to essentially mean "throughout the time," creating an ongoing obligation on USCIS's part. In her view, if she applies to USCIS for deferred action or parole "while" she is on the waitlist, USCIS must approve her application—the regulation provides that USCIS "*will grant* deferred action or parole to U-1 petitioners . . . *while* the U-1 petitioners are on the waiting list." 8 C.F.R. § 214.14(d)(2). Because Plaintiff currently has neither deferred action nor parole—and because she cannot receive deferred action while abroad—she posits that USCIS must grant her parole.

The Plaintiffs in *Bruno v. Director of USCIS*, --- F. Supp. 3d ----, 2025 WL 1937584 (D. Colo. 2025) made a similar argument. As the court explained it, they argued that "the regulation's provision that USCIS will grant deferred action or parole 'while' petitioners are on the waiting list creates an 'ongoing duty' for USCIS to 'issue both deferred action and parole depending on the needs of the [waitlisted U visa applicant] as long as (or while) the principal applicant is on the waiting list.'" *Id.* at *6 (quoting ECF No. 14 at 6). The court rejected the plaintiffs' reading of the regulation as "unpersuasive," reasoning that they had essentially read the phrase "as needed" into the regulation. *Id.*

Instead, the *Bruno* court adopted the position that many district courts have now taken regarding 8 C.F.R. § 214.14(d)(2): it requires USCIS to grant either deferred action or parole, but not both. *Id.* (collecting cases). The Northern District of Illinois also recently considered whether the word "while" imposes an "ongoing duty" on USCIS "to grant whichever of the two benefits"—deferred action or parole—"an eligible petitioner requests at any given point" and reached the same conclusion as the court in *Bruno*. *Kothari v. Director of USCIS*, No. 24 C 50101, 2025 WL 732075, at *7 (N.D. Ill. Jan. 24, 2025). It did so despite the fact that the plaintiffs pointed out that "this is exactly what USCIS does for some waitlisted petitioners—namely, those who are abroad, are granted parole into the United States, and later receive deferred action and work authorization." *Id.*

Although this court has not yet had the opportunity to consider the significance of the world "while" in 8 C.F.R. § 214.14(d)(2), the court has addressed a similar question: In *Rodriguez Hernandez*, 775 F. Supp. 3d at 826, this court held that, because the plaintiffs had already received deferred action, USCIS was not required to grant them advance parole. The court reaches an equivalent conclusion here. Having already granted Ms. Kondapalli parole on account of her placement on the U visa waitlist, USCIS is not now required to grant her parole again. Still, § 214.14(d)(2) clearly authorizes USCIS to grant her parole based on her placement on the U visa waitlist, and the regulations contemplate that doing so may be in the public interest given the underlying goals of the U visa program and the significant wait that Ms. Kondapalli faces before the final adjudication of her U visa. That Ms. Kondapalli traveled to and from India to receive treatment for the trauma she suffered as a crime victim may also speak to the equities of her parole request. Ultimately, however, it is within USCIS's discretion whether to grant Ms. Kondapalli parole for a second time.

## Conclusion

Defendant's Second Motion to Dismiss (Doc. 9) is GRANTED. Defendant's First Motion to Dismiss (Doc. 7) is MOOT.

Dated at Burlington, in the District of Vermont, this 3 day of October, 2025.

Geoffrey W. Crawford, Judge
United States District Court